**KELLY v. BLACKWELL et ux.**

No. 6837—Opinion Filed Jan. 30, 1917.

Rehearing Denied April 17, 1917.

(164 Pac. 103.)

(Syllabus by the Court.)

**Executors and Administrators — Purchase from Heir—Recovery of Price.**

B. qualified as administrator of J., a deceased Choctaw minor, and thereafter selected his allotment, which descended to his father and mother surviving him as his only heirs at law. While administrator, they conveyed the land to B., who sold the same to K., who gave back to B. his promissory note in part payment of the purchase money, payable upon the delivery by B. to K. of an abstract showing a clear title in B. There were no debts against the estate of J.; the land was unrestricted; the deed was for an adequate consideration; and there was no fraud in the transaction. Held, in a suit by B. against K., to enforce payment of the note, that the abstract containing said deed showed a clear title in B., and that he was entitled to recover on the note.

Error from District Court, Jefferson County; Frank M. Bailey, Judge.

Suit by A. P. Blackwell and L. R. Blackwell, his wife, against E. J. Kelly. Judgment for plaintiffs, and defendant brings error. Affirmed.

Bridges & Vertrees, for plaintiff in error.

Hatchett & Ferguson, for defendants in error.

TURNER, J. On August 14, 1913, A. P. Blackwell and L. R. Blackwell, his wife, defendants in error, sued E. J. Kelly, plaintiff in error, in the district court of Jefferson county on the following promissory note: "$2920.00.

"Waurika, Oklahoma, January 22, 1910.

"I, E. J. Kelly, of Waurika, Oklahoma, hereby agree to pay to A. P. Blackwell of Durant, Oklahoma, the sum of twenty-nine hundred and twenty dollars ($2920.00) said amount to be due and payable thirty days after abstract is furnished me showing a clear title in A. P. Blackwell to certain lands in Jefferson county, conveyed by A. P. Blackwell and wife to me on the 20th day of January, 1910, for which amount a vendor's lien is retained for the payment of same.

"E. J. Kelly."

For answer, after a general denial, Kelly specifically denied liability on the note, because, he said, the abstract tendered him by Blackwell failed to show in him a clear title to the land. After reply filed, the cause was tried to the court upon an agreed statement of facts, the material part of which is:

"4. It is agreed that the land in question was allotted to Jim Joel, a Choctaw minor Indian; that the allotment was made on the 27th day of October, 1905, and was made after the death of the said Jim Joel, and was made by A. P. Blackwell as administrator for the said Jim Joel, and the said A. P. Blackwell acting as administrator is the same A. P. Blackwell as plaintiff in this action, and that Jim Joel, allottee, died intestate while a child only about one year old, and left surviving him his father and mother, Hampton and Silen Joel, and no brothers or sisters. * *

"5. That on December 20, 1905, A. P. Blackwell purchased the land in question from Hampton Joel and Silen Joel, father and mother of Jim Joel, the allottee; that the said A. P. Blackwell was appointed administrator on the 17th day of October, 1905, for the purpose of selecting the allotment, and that he purchased the lands on the 20th day of December, 1905, and at the time of purchase he had not been discharged as the administrator, and that the purchase was made from the mother and father direct. * * *"

From which the court concluded as a matter of law that plaintiffs were entitled to recover, and rendered and entered judgment accordingly, to reverse which defendant brings the case here.

It is urged by defendant that the deed from Hampton Joel and Silen Joel, father and mother, and only heirs at law of Jim Joel, dated December 20, 1905, is void because, he says, the same was made, executed,

and delivered by them to Blackwell as the result of a purchase from them by Blackwell while undischarged as administrator of Jim Joel. Not so. It being conceded that there were no debts against the estate, that the land was unrestricted, and that there was no fraud in the transaction and the consideration was adequate, the deed was good and passed the title of the father and mother— the only heirs of Jim Joel— to Blackwell. 18 Cyc. 349 lays down the rule thus:

"While the purchase by an executor or administrator of real estate of his decedent or any interest therein from the widow, heirs, devisees, or others in interest is highly disfavored, the judicial disposition is usually to do no more than presume strongly against the validity of such a purchase and require the fiduciary to show affirmatively adequacy of consideration and the general fairness of the transaction, and if the transaction is in good faith and without fraud it may be treated as a similar transaction between strangers would be."

In Haight v. Pearson, 11 Utah, 51, 39 Pac. 479, the facts were that plaintiff as executor of his father's estate bought, through his attorney, from a brother, another one of the heirs of the estate, the brother's share of the father's lands. When plaintiff brought suit against his attorney to recover the lands, the attorney, among other things, pleaded that:

"The plaintiff was incapable of purchasing an interest in the estate, because he was executor. Being incompetent to purchase himself, he could not have another purchase in trust for him, and cannot therefore enforce any trust."

The attorney relied upon Comp. Laws Utah 1888, sec. 4196, p. 513, which reads:

"No executor * * * must, directly or indirectly, purchase any property of the estate he represents, nor must be interested in any sale."

He also relied upon the rule of equity to the effect "that contracts in which a trustee both buys and sells to himself are void." But the court held such statute and rule of equity had nothing to do with the case, and that plaintiff had a right to recover, and in passing said:

"But a contract to purchase the interest of an heir in an estate by an executor does not come within the letter or spirit of either the statute or this equitable rule. The executor has no authority, as such, to sell the interest of an heir in the estate. Such interest is not in any sense property of the estate; it is the property of the heir, and he alone can sell it. Owing to the advantage that might be taken of heirs by executors or administrators, if we were called upon to pass upon such a sale where the heir was claiming that he had

been overreached or wronged, we should scrutinize the matter, and, if unfair in its terms, would not hesitate to set such contract aside, but not because it was in violation of the statute cited. In other words, these sales by an heir to an executor are not within the statute at all. If they are fair in themselves, they should be upheld the same as other contracts."

In Barker v. Barker, 14 Wis. 142, a widow sued for partition of her deceased husband's estate, claiming to be the owner by purchase of the portions of two of the eight heirs, who answered, together with the other six, that the purchase was made with funds of the estate held by the plaintiff as administratrix, and it was insisted that she should be adjudged by the court to hold the same in trust for the heirs, which the court proceeded to do as to the lands so purchased, but as to lands purchased not with the trust funds, the court held the deeds conveyed title, and in the syllabus said:

"An administrator is not a trustee for the heirs, of the real property of the estate not necessary to be sold for the payment of debts, and may purchase in his own right, with his own funds, the interest of any of the heirs in such property."

In the opinion the court said:

"In our former decision we stated that we were satisfied from the evidence that no actual fraud was practiced by the widow in the purchase of those shares, by which the sale could be set aside. We will now add, upon a further consideration of the question, that we are satisfied that she did not stand in any such relation to them as would avoid the sale by an application of the law concerning the purchase of the trust estate by the trustee from the cestui que trust. Where the rule is applicable, we have adhered to it strictly. Gillett v. Gillett, 9 Wis. 194. But here we think the relation of trustee and cestui que trust with respect to the real estate did not exist. The administratrix had no title to it, but it descended to the heirs. True, it was liable, if necessary, to be sold to pay the debts of the deceased, by virtue of a statutory proceeding for that purpose. But in this case the necessity authorizing such a proceeding did not exist; no such proceeding was had; and the mere possibility of it in case the necessity had existed does not make the administratrix the trustee of the heir, and incapacitate her from purchasing his interest in the real estate."

In Carter et al. v. Lee, 51 Ind. 292, the facts were:

"George Cline died, seised in fee of the premises, and after his death his heirs conveyed the property to the plaintiff in fee. At the time of Cline's death, the property was in possession of the defendants Thomas Carter and Fisher, as tenants of Cline from year to year. Before the commencement of this ac-

tion, the plaintiff had put an end to the tenancy by a proper notice to quit. The plaintiff was the administrator of the estate of George Cline at the time he took the conveyance from his heirs. The personal assets of the estate amounted to only about $600, while Allen Carter had a claim allowed against it amounting to nearly ten times that amount. If on these facts the plaintiff was entitled to recover as against Thomas Carter and Fisher, the judgment below was correct. We are of opinion that on the facts the plaintiff was entitled to recover. The land, on the death of Cline, descended to his heirs, and they could convey it, subject to the payment of debts. The purchase by the plaintiff, while he was administrator, from the heirs, may have been voidable, but we do not decide that it was so. He took the land, however, subject to the claims of the creditors of the estate. The purchase was clearly not void if voidable. Had the debts all been paid, or should they yet be paid, we see no reason why the sale should not stand, in the absence of any actual fraud, which is not shown. If the sale was voidable, it could only be avoided by parties interested, heirs or creditors. The appellants were neither, and it does not lie with them to interpose objections to the sale."

In Herron v. Herron, 71 Iowa, 428, 32 N. W. 407, the facts were that plaintiff was the father and defendant the widow of John Herron, who theretofore died intestate and without issue the owner of the real estate involved. Some time after his death plaintiff, the father, gave to a son power of attorney to sell and convey his interest in the real estate, which he did, and thereafter the father came into court and sued to set aside the deed on the ground of fraud. But the court, after affirming the judgment of the trial court refusing to set it aside, said:

"Defendant had been appointed administratrix of the estate of her husband before the transaction in question. It is urged that her position with reference to the estate created a fiduciary relation between the parties; and, as she acquired an interest in the property of the estate in the transaction, it is presumptively fraudulent. But, clearly, this position is not tenable. Defendant did not occupy a position of trust or special confidence towards plaintiff. She did not deal with his attorney in her capacity as administratrix of the estate. On the death of John Herron, the real estate of which he was seised descended in equal shares to plaintiff and defendant. Her interest in the property was a personal interest. In her representative capacity she had no interest whatever. It was a case of tenants in common dealing with each other with reference to the common estate. Neither of the parties was charged with the duty of protecting the rights or guarding the interest of the other in the property. They stood upon an equality, and clearly there can be no presumption of unfairness or fraud in the transaction."

See, also, Taylor v. Taylor, 259 Ill. 524, 102 N. E. 1086; Wright v. Arnold, 14 B. Mon. (Ky.) 638, 61 Am. Dec. 172; State ex rel. Jones v. Jones, 53 Mo. App. 207; Golson v. Dunlap, 73 Cal. 157, 14 Pac. 576; Matter of Ledrich, 68 Hun. 396, 22 N. Y. Supp. 978; 22 Cent. Dig. tit. "Executors and Administrators," sec. 622.

We are therefore of opinion that the deed complained of showed a clear title in Blackwell, and that the judgment of the trial court should be affirmed.

All the Justices concur.