## BARNETT et al. v. LOVE et al.

No. 15513—Opinion Filed Jan. 19, 1926.

Rehearing Denied May 18, 1926.

**1. Appeal and Error—Equitable Actions — Findings of Fact—Conclusiveness.**

In an action of purely equitable cognizance, this court is authorized to consider and weigh the evidence for the purpose of determining whether the findings of fact made by the trial court are clearly against the weight thereof, but if such findings of fact are not clearly against the weight of the evidence, they are conclusive in this court.

**2. Same—Modification of Decree.**

In such a case, where the conclusions of law, announced by the trial court as applied to the facts found, are in part correct and in part incorrect, and the decree thereafter rendered is in conformity to the incorrect conclusions of law, such decree will be modified.

**3. Indians—Homestead—Void Conveyance —Disposition by Will.**

Where a female member of one of the Five Civilized Tribes attempted to convey her individual land occupied at the time by her and her husband as a homestead, which deed is void by reason of the husband's assent thereto being obtained by fraud, her title is not divested thereby, but passes under her will, duly admitted to probate, by virtue of section 23, Act of Cong. April 26, 1906 (34 Stat. 137), and Comp. Stat. 1921, sec. 11224, subject to the right of the surviving husband to his homestead therein, under section 1224, Comp. Stat. 1921, and section 1, art. 12, Constitution of Oklahoma.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Wagoner County; O. H. Searcy, Judge.

Action by Richard Love against Polly Barnett and Minerva Jones to cancel and set aside a certain deed and mortgage on the ground of fraud. Mary Dan was permitted to intervene in the action. Judgment for plaintiff and intervener, and defendants bring error. Decree of the trial court affirmed in part and vacated in part and the cause remanded, with directions.

Wesley, Atkins & Chandler, for plaintiffs in error.

Watts & Broaddus and John C. Graves, for defendants in error.

Opinion by THOMPSON, C. This case was originally commenced in the district court of Wagoner county on October 8, 1920, by Richard Love against Polly Barnett, Minerva Jones, and J. B. Campbell to set aside a certain deed and a certain mortgage upon real estate described in the petition, both of which instruments were executed by Richand Love and his wife, Grace Love, fraud being alleged as the ground for setting aside said conveyances. J. B. Campbell filled his disclaimer in the action, and the cause was dismissed as to him. Mary Dan was permitted to intervene, and filed an amended answer and cross-petition, in which she adopted the allegations of fraud and undue influence contained in the amended petition of Richard Love, and, in addition thereto, alleged a conspiracy on the part of the defendants.

Upon the trial of the case a stipulation was entered of record, the effect of which was an agreement on the following facts: That on May 9, 1919, and prior to the marriage of Richard Love to Grace Love, the said Grace Love, who was the allottee of the lands here involved, conveyed the same by warranty deed to Charles G. Watts for a stated consideration of $1,000; that Charles G. Watts reconveyed this land to Grace Love by a quitclaim deed dated July 26, 1920, for a consideration of $4,500, this deed being recorded at 3 p. m. July 27, 1920; that the mortgage and deed in question were dated July 26, 1920, and were recorded respectively at 3:02 and 3:04 p. m. on July 27, 1920; that Grace Love left a will, which was duly and regularly probated, and that by said will she devised and bequeathed all of the property of which she died seized and possessed to the said Richard Love, her husband, and to Minerva Jones and Polly Barnett share and share alike, except that it was provided in said will that all of her just debts and the expenses of her last sickness and burial should be first paid out of her estate, and that bequests of $1 each should be paid to Johnson Franklin and Mary Dan, who were half-brother and half-sister of Grace Love.

With this stipulation in the record, the proof was confined upon the trial to the questions of whether the land involved was the homestead at the date of the death of Grace Love, and whether the mortgage and deed in question were executed by Grace Love and Richard Love through the fraud and undue influence of the defendants Polly Barnett and Minerva Jones. A jury was impaneled to act in an advisory capacity to the court, but after its verdict was returned

the court disapproved a part of the jury's findings and adopted others, and, thereupon, the court made its own findings of fact and stated its conclusions of law thereon. The trial court found that the land here involved was the homestead of Grace Love and Richard Love at the time of the death of the former; that at the time of the execution of the deed and mortgage in question Grace Love was of understanding mind and knew the purpose and result of her acts, and that she executed the deed and mortgage without persuasion or undue influence on the part of the defendants, but that Richard Love was imposed upon by the defendants in the execution of said deed and mortgage, and that his signature was obtained by fraud; that the deed was therefore void; that notwithstanding the fact that the deed in question was void because of the fraud practiced upon Richard Love, it operated to divest Grace Love of her title in the homestead so that no title to the land passed under the terms of her will.

After unsuccessful motion for new trial, the case has been brought to this court for review by petition in error with case-made attached.

There are 25 assignments of error, which are reduced to seven propositions in the briefs and arguments, and which may be further boiled down to a residuum of two for the purpose of determining the only material questions involved in this proceeding. This is an equitable action, and this court is therefore authorized to consider and weigh all of the evidence, and to apply to the established facts the legal principles applicable thereto, and if it is determined that the decree of the trial court is clearly against the weight of the evidence, or that the trial court misapplied the law to the facts, to render, or cause to be rendered, such decree as the evidence, the law, and the rights of the parties authorize. Pevehouse v. Adams, 52 Okla. 495, 153 Pac. 65; Marshall v. Grayson, 64 Okla. 45, 166 Pac. 86; Martin v. Bruner, 64 Okla. 82. 166 Pac. 397; Hart y. Frost, 73 Okla. 148, 175 Pac. 257; Lee v. Little. 81 Okla. 168, 197 Pac. 449; Keechi Oil & Gas Co. v. Smith, 81 Okla. 266, 198 Pac. 528.

First to be considered is the action of the trial court in overruling the demurrer of defendants to, and their motion to dismiss, the amended answer and cross-petition of the intervener, Mary Dan. This amended answer and cross-petition alleged intestacy of Grace Love, deceased, and the intervener based her right of recovery on the fact that she is a half-sister of Grace Love, deceased,

and that she is one of the three heirs entitled to share in the estate under the law of succession. As a part of this amended pleading, intervener adopted and made a part thereof the allegations of fraud and undue influence contained in plaintiff's amended petition. Among these allegations of plaintiff are the affirmative allegations that Grace Love made a will, in which Johnson Franklin and Mary Dan were each bequeathed the sum of $1, and that this will had been duly admitted to probate, and the probated will is made a part of the petition by reference. Plaintiff alleged further that the execution of this will was unknown to him at the time he signed the deed and mortgage in question, and that he was designedly kept in ignorance thereof, and other fraudulent representations were made to him. By the adoption of these allegations, the intervener confuted her allegations of intestacy on the part of Grace Love, and also her right to claim any part of the estate as an heir in the absence of allegations that she had contested the probate of the will and that the probate thereof had not become a final adjudication, or that she is under an existing and continuing legal disability by reason of which the adjudication had not become final as to her. Comp. Stat. 1921, sec. 1121; Ward v. Board of Com'rs of Logan County, 12 Okla. 267, 70 Pac. 378; Bell v. Davis, 43 Okla. 221, 142 Pac. 1011; Cooper v. Newcomb, 73 Okla. 53, 174 Pac. 1029. No such allegations appear. This amended answer and cross-petition of intervener was filed June 8, 1921, and the demurrer was overruled December 19, 1921. It is clear that the demurrer should have been sustained for the reason that intervener had stated no cause of action.

The remaining question for determination is whether the findings of fact made by the trial court are clearly against the weight of the evidence, and, if not, did the trial court err in its conclusion of law based on the facts found, which findings of fact and conclusions of law are as follows:

"Findings of Fact.

"(1) That the second and third interrogatories and the answers thereto are adopted by the court and made his own.

"(2) That the land in question was the homestead of the plaintiff and Grace Love.

"(3) That the answers to the first and fifth interrogatories are not sustained by the evidence and are against the weight of the evidence.

"Conclusions of Law.

"(4) The court concludes as a matter of law that the deed executed by Richard and

Grace Love on July 26, 1920, should as to Richard Love be canceled and set aside and the land being the homestead of the plaintiff, Richard Love, and Grace Love, said conveyance is void and conveys no title to the defendants, Polly Barnett and Minerva Jones.

"(5) The court further concludes that the land in suit did not ascend or descend under the will of Grace Love made on July 22, 1920, she not being seized and possessed of the said lands at the time of her death.

"(6) The court further finds that Richard Love is entitled to and has claimed said premises as his homestead and has occupied said premises as such since the death of Grace Love and is entitled to collect the rents and profits therefrom."

There is ample evidence, if believed by the trial court, to establish the fraudulent representations and fraudulent concealment alleged to have been practiced on Richard Love to induce him to join in the execution of the deed here in question. The first finding of fact made by the trial court is therefore not clearly against the weight of the evidence.

An examination of the evidence preserved in the record reasonably establishes that the deed of May 9, 1919, from Grace Love (nee Marshall) to Charles G. Watts, was intended to be and was in fact a mortgage, so that title to the land was never divested by that conveyance, and that the quitclaim deed from Watts to Grace Love under date of July 26, 1920, merely operated as a release of the lien held by him. The land involved was the individual allotment of Grace Marshall by virtue of her Creek enrollment; she married Richard Love late in the year 1919 or early in 1920. There were no children of either residing with them at any time. Richard Love is a noncitizen of the Creek Tribe. After their marriage the two lived upon the lands and made their home there until a short time before the death of Grace Love, when she caused herselg to be removed temporarily to the home of her mother, where she died. The second finding of fact made by the trial court, that the land involved was a homestead at the time of Grace Love's death, is not clearly against the weight of the evidence.

There is no evidence in the record, which seriously controverts the third finding of fact by the trial court, to the effect that Grace Love executed the warranty deed in question freely and understandingly without overbearing persuasion or undue influence of the grantees therein named.

It follows that the three findings of fact made by the trial court are conclusive and

118—2

must be sustained as proper findings under the evidence, as not being against the clear weight thereof.

As its first conclusion of law from the facts found, the trial court stated:

"The court concludes as a matter of law that the deed executed by Richard and Grace Love on July 26, 1920, should as to Richard Love be canceled and set aside and the land being the homestead of the plaintiff, Richard Love, and Grace Love, said conveyance is void and conveys no title to the defendants, Polly Barnett and Minerva Jones."

This is deemed to be a correct conclusion of law on the facts found. The assent of Richard Love to the conveyance of the homestead by his wife, having been obtained by fraud, was no assent, and his act in joining her in the execution of the deed under such circumstances was voidable. Having elected to avoid his acts upon discovery of the fraud, the deed to defendants became and is a deed to the homestead executed by the wife alone. A deed to the homestead executed by one spouse without the other joining therein is absolutely void and conveys no title. Const., art. 12, sec. 2; McCammon v. Jenkins. 44 Okla. 612, 145 Pac. 1163; Whelan v. Adams, 44 Okla. 696. 145 Pac. 1158: McCurry v. Sledge. 48 Okla. 27, 149 Pac. 1124.

As its second conclusion of law the trial court stated:

"The court further concludes that the land in suit did not ascend or descend under the will of Grace Love made on July 22, 1920, she not being seized and possessed of the said lands at the time of her death."

This is deemed to be an incorrect conclusion of law from the facts found. The deed of July 26, 1920, from Grace Love to defendants, purporting to convey the homestead. not having been legally joined in by her spouse. was ineffectual as a conveyance of the homestead, and did not operate to divest the title out of her. Shanks v. Norton, 79 Okla. 93, 191 Pac. 170. Therefore, the will of Grace Love, when duly admitted to probate, passed the title to this land to the devisees therein named, subject to the homestead right of Richard Love and to the other provisions of the will.

As its third conclusion of law, the trial court stated:

"The court further finds that Richard Love is entitled to and has claimed said premises as his homestead and has occupied said premises as such since the death of Grace Love and is entitled to collect the rents and profits therefrom."

Whether this conclusion of law is correct or erroneous upon the facts found must be determined from a consideration of certain constitutional and statutory provisions, aided by interpretations of those provisions announced by the court. Section 1. art. 12, of the Constitution of Oklahoma says:

"Provided, that nothing in the laws of the United States or any treaties with the Indian Tribes of the state shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the state."

The two sections of the statute here involved are section 1224 and section 11224, Comp. Stat. 1921. The first of these sections reads:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subjected to administration proceedings, until it is otherwise disposed of according to law; and, upon the death of both husband and wife, the children may continue to possess and occupy the whole homestead until the youngest child becomes of age."

This section was a part of the statutes of 1890, appearing therein in totidem verbis as section 1375, and has continued in force since statehood by virtue of section 2 of the Schedule to the Constitution. It has been considered by this court in numerous cases, but probably its most generally recognized interpretation is that announced by this court in the case of Holmes v. Holmes, 27 Okla. 140, 111 Pac. 220. That case arose prior to statehood. but was determined by this court since statehood. In that case Edwin M. Holmes died intestate having title to the lands involved, which were occupied by him and his wife as a homestead. Under the law of descent the wife took an undivided one-half interest in the land. the other one-half going to seven brothers of Edwin M. Holmes in equal shares. After all debts had been paid from the personal estate and the administration closed, these brothers commenced their action to partition the homestead, which the widow had continued to occupy. The conclusion of this court upon these facts, by reason of the above quoted provisions of section 1224, supra, is in this language:

"We conclude that, upon the death of Edwin M. Holmes, his heirs succeeded to the title to all his real estate, including his homestead, as provided by section 6895, Wilson's Rev. & Ann. St., subject, however, to the right of defendant in error to use and occupy the same as a homestead, so long as she resides thereon and makes it her home. While she occupies said premises as her home and homestead the same is not

subject to be partitioned at the suit of the heirs."

In the body of the opinion, in discussing the purpose and effect of the clause, "until it is otherwise disposed of according to law," contained in section 1224, Justice Hayes said:

"There are various ways by which, under the law, the right of occupancy of the homestead may be terminated. It may be sold for taxes; or upon foreclosure of any mortgage thereon executed by both husband and wife, or upon execution to enforce judgment for the purchase price or any part thereof, or in the enforcement of a mechanic's lien. A termination of the homestead right under any of the foregoing procedures would be a termination thereof within the meaning of the phrase 'until it is otherwise disposed of according to law.'"

While the above enumeration of the ways a homestead right may be terminated may not embrace all the means, yet, in our judgment, it certainly does not include' the right to dispose of the homestead right of a surviving spouse by will. In the case of Belt et al. v. Bush et al., 74 Okla. 94, 176 Pac. 935, it was there said that the right of the surviving spouse to the whole homestead vests in such spouse immediately upon the death of the husband or wife as a matter of law in the following words:

"No order of the county court is required to entitle the surviving husband or wife to continue in the possession and occupancy of the homestead. The right to occupy the homestead is given by the statute and requires no order of court to vitalize it and give it effect."

It was also said in the body of the opinion in the case of Belt v. Bush, supra:

"The heirs of Linda Bush had full right upon her death to sell and convey their interests in her estate. They, however, had no interest in the homestead right, and their conveyance therefore did not dispose of the homestead. To give to the statute the construction contended for by plaintiffs in error would be to render it utterly useless for the purposes for which it was intended, since under that construction any heir of a decedent could wipe out the right of a surviving spouse to occupy the homestead by conveying his interest in the estate."

It is not a matter then of "administrative proceedings," for, in the very section 1224, supra, it is said:

"The survivor may continue to possess and occupy the whole homestead, which shall not, in any event, be subject to administration proceedings."

It may be urged that section 1, art. 12 of the Constitution, refers to the homestead of a family, but section 3 of the same article says that the Legislature may change or amend the terms of this article. The Legislature has spoken in the above cited section 1224, and recognized the right of the surviving spouse to the whole homestead, regardless of whether there were any children or not, and this court has so recognized this principle in the case of Holmes v. Holmes, supra. We cannot see that there is any distinction between "administration proceedings", as used in section 1224, and "probate proceedings" under a will, as regards the homestead of a surviving spouse. It is true that "administration proceedings" arise only in case of intestacy, the descent cast thereby not being an alienation, and, in the absence of section 1224, the heirs might come in and destroy the homestead of the surviving spouse by partition, as was sought to be done in the case of Holmes v. Holmes, supra, or by conveyance of their several interests, as was attempted to be done in the case of Belt et al. v. Bush et al., 74 Okla. 94, 176 Pac. 935. Thus the foresight and frugality of the deceased spouse in providing a home for his family might be rendered ineffectual by' the rapacity or incompetency of the heirs. The law says this may not be done.

It may be contended that where a deceased spouse has by written will directed the disposition of his or her property, and the will is probated as being duly and legally signed, published, and attested at a time when the testator was competent to make a will, then a different law determines the right of the surviving spouse. Disposition by will constitutes an alienation. This leads to a consideration of the provisions of Comp. Stat. 1921, section 11224. The language of that section, material for consideration here, reads:

"Every estate and interest in real or personal property to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will; Provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband; Provided, further, that no person who is prevented by law from alienating, conveying or incumbering real property while living, shall be allowed to bequeath the same by will."

This statute was enacted in 1909 (Sess. Laws 1909, ch. 41, sec. 1), and section 5 of the act repeals all laws in conflict therewith.

This court, in the case of Blundell v. Wallace, 96 Okla. 26, 220 Pac. 40, opinion by Justice Branson, has expressly held that the first proviso of section 11224 is applicable to Indians as well as to white citizens. That opinion construed said proviso in its relation to section 23 of the Act of Congress of April 26, 1906, which authorized Indians to dispose of their property by will, and in the first and second paragraphs of the syllabus in the case of Blundell v. Wallace, supra, it is said:

"1. The Act of Congress of April 26, 1906, entitled, 'An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory and for other purposes,' provides in section 23: 'Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein, provided that no will of a full-blood Indian shall be valid if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States Commissioner.' This provision of the act of Congress had for its purpose the further removal of restrictions from citizens of the Five Civilized Tribes of Indians, and was not intended by Congress as conferring an absolute right of disposition of his property without regard to the law of the state where the property is located.

"2. Section 8341, Rev. Laws 1910, provides: 'Every estate and interest in real or personal property to which heirs, husbands, widow or next of kin might succeed, may be disposed of by will: provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband; provided, further, that no person who is prevented by law from alienating, conveying or incumbering real property while living shall be allowed to bequeath same by will.' Held, this provision is applicable to Indian citizens, as well as other citizens of the state."

On appeal to the Supreme Court of the United States, that decision of this court was affirmed by Mr. Justice Sutherland, found in 45 Sup. Ct. Rep. page 247, using this language:

"We agree with the ruling of the state Supreme Court that Congress intended thereby (by sec. 23, ib.,) to enable 'the Indian to dispose of his estate on the same footing as any other citizen, with the limitation contained in the proviso thereto.' The effect of section 23 was to remove a restriction theretofore existing upon the testamentary power of the Indians, leaving the regulatory local law free to operate as in the case of other persons and property."

It is clearly evident that since the first proviso of section 11224 applies to Indians equally with whites, the preceding language of the section, on which the proviso operates as a limitation, also applies to both classes, and that Indians as well as whites may by will dispose of every estate and interest in real or personal property to which heirs, husband, widow or next of kin might succeed, subject to the statute law of this state.

Under the law of descent and distribution in the state, Richard Love, upon the death of his wife, intestate, would have inherited one-half of her estate, but under the provision of the statute authorizing the making of the will, Grace Love, the wife, could devise two-thirds of her property to others, and she did undertake to do so in the will, but gave to Richard Love, her husband, just what the statute says that he was entitled to under a will, no more and no less, and, in our opinion, under the facts and the law in this case, she could not by her will convey away the right of homestead from Richard Love, her surviving spouse, especially under the last proviso of section 11224, supra. We have heretofore found that Grace Love's deed and mortgage, executed during her lifetime, to the homestead, were void because her husband's signature was obtained thereto by fraud, and that she could not convey in her lifetime her land without her husband joining her in the conveyance because of its homestead character, and it would be a contradiction in terms to say in the one instance that she could not so convey her land by deed during her lifetime, and then say that she could convey it by will to become effective after her death, and thereby deprive Richard Love, her surviving spouse, of his homestead right. A will is a conveyance of a title to land the same as a deed, the first to take effect after her death and the latter to take effect instanter. Section 11224 says:

"Provided, further, that no person, who is prevented by law from alienating, conveying or incumbering real property while living, shall be allowed to bequeath same by will."

It was so held in the second paragraph of the opinion in the case of Blundell v. Wallace, supra, by Justice Branson, which was afterwards affirmed by the Supreme Court of the United States on appeal in 45 Sup. Ct. Rep. 247. It is, therefore, our opinion that the devisees, under the will, take title to the land subject to the homestead right

of Richard Love to take the rents and profits of the whole homestead as long as he resides thereon and maintains it as a homestead.

It is, therefore, concluded that the provisions of sections 1224 and 11224 are not inconsistent, and that the last will and testament of Grace Love, by which she devised and bequeathed her one-third estate to her surviving husband and two-thirds to the other parties herein named, was effectual as a testamentary disposition, and upon its admission to probate conveyed the land to the devisees therein named subject only to the homestead right of Richard Love and that he has the right to the use and occupancy thereof, as above stated, as long as he maintains his homestead right thereto, and that the third conclusion of law announced by the trial court is correct, and that the decree of the trial court is reversed as to the conclusion of law No. 5: "That the land in this action did not ascend or descend under the will of Grace Love made on July 22, 1920, she not being seized and possessed of said lands at the time of her death;" and affirmed upon all other findings of fact and conclusions of law.

For the reasons herein stated, the decree of the trial court is vacated and set aside, and this cause is remanded to the trial court with directions to enter a decree in conformity with the views herein expressed. A proper decree should include an order sustaining the demurrer to the answer and crosspetition of Mary Dan, canceling and setting aside the purported warranty deed to the homestead, executed July 22, 1920: decreeing title to the lands involved to be in Richard Love, Polly Barnett. and Minerva Jones, in the proportions named in the will of Grace Love, subject to the homestead right of Richard Love for the use and occupancy thereto and to rents and profits therefrom from the whole of said homestead as long as he resides thereon and maintains the same as his homestead. and enter judgment in favor of Richard Love and against Polly Barnett and Minerva Jones in the sum of $4,000 and interest at six per cent. from the date of the judgment of the trial court, and for the whole of the rents that have accrued since the former judgment in this case, and to render judgment therefor in favor of Richard Love. and in all other respects the decree of the trial court is hereby affirmed. Richard Love should be awarded his costs.

Attorney for Richard Love asked for judgment on the supersedeas bonds filed and approved in this cause. and it appearing that two bonds for $8,000 each were filed to se-cure the judgment for $4,000 obtained by Richard Love in the trial court against Polly Barnett and Minerva Jones with Minerva Jones as principal and C. Wesley, Robert Johnson, W. E. McIntosh, and A. M. Myers as sureties on one of the bonds, and Minerva Jones as principal and George Lythcott as surety on the other, it is. therefore, ordered and decreed that Richard Love do have and recover of and from said principal and sureties above named, the sum of $4,000, the amount of his judgment and the costs incurred by him.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 898 §·2869; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81. (2) 4 C. J. p. 1149 § 3157. (3) 31 C. J. p. 527 § 103.